T.C. Memo. 1998-430


UNITED STATES TAX COURT


C.H. ROBINSON, INC. AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

C.H. ROBINSON, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 9730-96, 26811-96.     Filed December 8, 1998.


<u>William J. Hippee, Jr.</u> and <u>David B. Strong</u>, for petitioners
in docket Nos. 9730-96 and 26811-96.

<u>Edward J. Plumier</u>, for petitioner in docket No. 9730-96.

<u>Jack Forsberg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  For the years in issue, respondent determined deficiencies in petitioners' consolidated Federal income taxes as follows:

| <u>Year</u> | <u>Deficiency</u> |
|------|------------|
| 1990 | $275,348 |
| 1991 | 494,345 |
| 1992 | 21,320 |

For 1992, petitioners claim an overpayment of $310,359.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are whether payments totaling $2,166,000 qualify as amortizable business expenses relating to a covenant not to compete and whether payments totaling $749,905 qualify as deductible salary expenses for services rendered.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.

When the petitions were filed, petitioners' principal place of business was located in Eden Prairie, Minnesota.

During the years in issue, C.H. Robinson, Inc. (petitioner), was a Minnesota corporation and the parent corporation of a group of affiliated corporations that filed consolidated Federal income

tax returns.  Petitioner and its affiliated corporations were engaged in various businesses relating to the distribution and sale of produce and the provision of transportation and customs brokerage services.

In 1990, Meyer Customs Brokers, Inc. (MCB), was a Minnesota corporation engaged in the customs brokerage business.  Services provided by customs brokers involve the processing and documentation of import goods through U.S. Customs, the payment of duties and freight charges, and freight forwarding.

Prior to the transaction discussed below, Joel Meyer (Meyer) was president and sole shareholder of MCB, and the stock ownership of MCB was not in any way related to the stock ownership of petitioner.  Other than the absence of any relationship in the stock ownership of petitioner and of MCB, the identity of the owners of the stock in petitioner is not disclosed in the record.

In 1984, Meyer founded MCB.  As of 1990, Meyer was 40 years of age and had been involved in the customs brokerage business for over 15 years.  Meyer had developed extensive relationships with the clients of MCB, and Meyer was the key individual who, on behalf of MCB, maintained contact with the clients.  The earnings of MCB depended primarily on the efforts of Meyer.  In each of 1988 and 1989, Meyer was paid a salary by MCB of $600,000 and

$800,000, respectively. Meyer was a particularly effective businessman and was well regarded as a customs broker.

In late 1989, representatives of petitioner and C.H. Robinson International, Inc. (International), a wholly owned subsidiary of petitioner, initiated negotiations with Meyer for acquisition by International of certain assets of MCB (the assets of MCB), including the goodwill, customer lists, and trade names, but excluding certain assets, principally cash and accounts receivable.

As summarized in the schedule below, an offer and several counteroffers were made by Meyer individually and as representative of MCB, and by representatives of petitioner and International relating to the amount of cash and stock consideration to be paid to MCB for the assets of MCB and relating to amounts to be paid to Meyer under a 3-year covenant not to compete and a contingent salary bonus agreement:

| Consideration to be Paid to MCB and Meyer as | Under MCB's Offer to Sell of 8/16/89 | Under International's Counteroffer to Purchase of 11/28/89 |
| --- | --- | --- |
| Cash | $2,000,000 | $1,500,000 |
| Stock in petitioner | 1,000,000 | 0 |
| Promissory note | 500,000 | 0 |
| Salary bonus over 3 years | 0 | 750,000 |
| Covenant not to compete | 0 | 750,000 |
| Total amount to be paid to MCB and to Meyer | $3,500,000 | $3,000,000 |

After receiving tax advice, in early January of 1990, representatives of petitioner and of International revised

International's counteroffer to which revised counteroffer Meyer and MCB agreed. The final form of the agreement that was reached on January 11, 1990, between Meyer individually, and as representative of MCB, and International is summarized below:

| Consideration to be Paid to MCB and Meyer as | | Form As Finally Agreed to |
| --- | --- | --- |
| Cash | | $ 300,000 |
| Stock in petitioner | | 0 |
| Promissory note | | 0 |
| Salary bonus over 3 years | | 750,000 |
| Covenant not to compete | | |
| Amount at closing | $1,290,000 | |
| Amount in 1991 | 292,000 | |
| Amount in 1992 | 292,000 | |
| Amount in 1993 | 292,000 | |
| Total to be paid under Covenant | | 2,166,000 |
| Total amount to be paid to MCB and to Meyer | | $3,216,000 |

On March 7, 1990, the acquisition of the assets of MCB was consummated. At closing, International paid to MCB the $300,000 cash due and to Meyer the $1,290,000 due under the purported covenant not to compete, and Meyer entered into the 3-year covenant not to compete with International and a 3-year employment agreement reflecting the contingent salary bonus.

After the acquisition, MCB's customs brokerage business was conducted as a division of International and continued to prosper.

Under the employment agreement, Meyer agreed to expand the customs brokerage business throughout the United States. The employment agreement also contained a 2-year nonsolicitation

clause to commence upon termination of Meyer's employment with International under which, after his employment with International, Meyer was prohibited from soliciting for 2 years any of MCB's former clients.

The $750,000 contingent salary bonus was to be paid to Meyer ratably in March of 1991, 1992, and 1993 -- $250,000 in each year -- if the customs brokerage business of International reached a net profits goal in each year of $700,000, prior to deductions for taxes and prior to Meyer's salary, bonus, and profit-sharing contributions (net profits). If the $700,000 net profits goal was not reached, a pro rata share of the $250,000 salary bonus was to be paid to Meyer corresponding to the percentage of the $700,000 net profits goal that was reached. The $700,000 net profits goal was based on the fact that MCB's annual net profits in years immediately preceding 1990 were approximately $700,000. After termination of employment with International or after Meyer's death, no salary bonus would be paid to Meyer or to his heirs.

For each of the years 1990, 1991, and 1992, in addition to the $1,290,000 paid at closing, Meyer was paid the $292,000 under the purported covenant not to compete. Also with respect to 1990, 1991, and 1992, all or a majority of the $700,000 net profits goal for the customs brokerage business was reached, and Meyer was paid by International as a salary bonus $245,905 in

1990, $250,000 in February of 1992 for 1991, and $250,000 in late 1992 for 1992.

On Meyer's individual Federal income tax returns for 1990, 1991, and 1992, Meyer reported and treated as ordinary income the $1,290,000 he received at closing under the purported covenant not to compete, the three annual payments of $292,000 he received under the covenant not to compete, and the three annual payments of approximately $250,000 he received as salary bonuses.

On petitioners' consolidated corporate Federal income tax returns for 1990, 1991, and 1992, ordinary business expense deductions were claimed with respect to the covenant not to compete in the respective amounts of $601,677, $722,000, and $722,000 -- a total of $2,166,000.[1]  Also, ordinary business expense deductions were claimed for 1990, 1991, and 1992 with respect to the amounts accrued and/or paid to Meyer each year as a salary bonus.

On audit, respondent disallowed petitioners' claimed deductions relating to the covenant not to compete and to the salary bonus on the grounds that the amounts paid as such actually represent nondeductible capital expenditures.

---

[1]     The business expense deductions claimed for the covenant not to compete represent a 3-year amortization of a total of $2,045,677, which is $120,323 less than the total stated amount of $2,166,000 purportedly paid for the covenant not to compete. The $120,323 difference is not explained in the record, and the $120,323 apparently has not been claimed as a business expense deduction for the years in issue.

OPINION

Amounts Paid to Meyer as Covenant Not To Compete

Amounts paid for covenants not to compete generally are deductible over the life of the covenants as current business expenses. Warsaw Photographic Associates, Inc. v. Commissioner, 84 T.C. 21, 48 (1985). Amounts paid, however, for goodwill or for the going concern value of a business generally are treated as nondeductible capital expenditures. Fong v. Commissioner, T.C. Memo. 1984-402, affd. without published opinion 816 F.2d 684 (9th Cir. 1987).

To be respected for Federal income tax purposes, covenants not to compete should reflect economic reality. Patterson v. Commissioner, 810 F.2d 562, 571 (6th Cir. 1987), affg. T.C. Memo. 1985-53; Lemery v. Commissioner, 52 T.C. 367, 375 (1969), affd. per curiam 451 F.2d 173 (9th Cir. 1971). Taxpayers generally bear the burden of proving entitlement to claimed deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

In 1990, at the time of the purchase of the assets of MCB, Meyer was an experienced, relatively young, and successful customs broker. As a result of his investments and the sale of the assets of MCB, Meyer had sufficient capital available and the ability to start a new customs brokerage business and to compete effectively with International. We believe that the covenant not

to compete that Meyer entered into with petitioner and with International had substantial economic reality, although, as explained below, a portion of the amount allocated thereto by Meyer, MCB, petitioner, and International, we regard as excessive, and we treat as a nondeductible capital expenditure.

Petitioners' and respondent's expert witnesses valued the covenant not to compete at $2,300,000 and at $26,800, respectively.

The offer and counteroffers that were made during negotiations for purchase of the assets of MCB suggest that the $1,290,000 cash payment made at closing purportedly relating to and for the covenant not to compete did not, in substance, constitute payment for the covenant not to compete. Rather, this $1,290,000 cash payment was made at closing along with the stated $300,000 cash portion of the purchase price. Together, these two cash payments are closely associated with the terms of International's original counteroffer under which it was proposed that International would make at closing a $1.5 million cash payment for the assets of MCB. Also, under that original counteroffer, only $750,000 was to be allocated to the covenant not to compete. Only after tax advice was obtained by International were the terms of the counteroffer modified to reflect a much higher stated amount to be allocated to the covenant not to compete.

Ignoring the $1,290,000 cash paid at closing purportedly for the covenant not to compete, the total of $876,000 that was paid for 1990, 1991, and 1992 for the covenant not to compete ($292,000 for each of 1990, 1991, and 1992), strongly resembles International's original counteroffer under which a total of $750,000 was to be paid for the covenant not to compete.

We conclude that the $1,290,000 cash paid at closing purportedly relating to the covenant not to compete does not reflect economic reality, should be treated as consideration paid for the assets of MCB, and constitutes a nondeductible capital expenditure. We also conclude that the cumulative $876,000 paid for 1990, 1991, and 1992 for the covenant not to compete does reflect economic reality, and the deductions relating thereto (to be amortized over 3 years) are deductible as current business expenses for each year.

Amounts Paid to Meyer as a Salary Bonus

Under section 162(a)(1), ordinary and necessary business expense deductions are allowed, including reasonable allowances for salaries or other compensation paid for personal services. Sec. 1.162-7(a), Income Tax Regs. More specifically with regard to salary bonuses, amounts paid for salary bonuses to employees are deductible "when * * * made in good faith and as additional compensation for the services actually rendered by the employees,

provided such payments, when added to the stipulated salaries, do not exceed a reasonable compensation for the services rendered." Sec. 1.162-9, Income Tax Regs.

Whether amounts paid as salary bonuses are to be treated as reasonable and as paid for services rendered constitutes a factual question. American Intl Coal Co., Inc. v. Commissioner, T.C. Memo. 1982-204, affd. without published opinion 709 F.2d 1490 (3d Cir. 1983).

Many factors are to be considered in determining whether compensation should be treated as reasonable in amount. Mayson Manufacturing Co. v. Commissioner, 178 F.2d 115, 119 (6th Cir. 1949), remanding a Memorandum Opinion of this Court. Where earnings of a corporation are not dependent upon efforts of a large number of employees but are primarily dependent upon efforts of a few key individuals and where the retention of these individuals in the employ of the corporation is necessary to its continued successful operation, the use of a percentage of profits may be a valid manner to compute a reasonable level of compensation for services rendered. In Foos v. Commissioner, T.C. Memo. 1981-61, we treated compensation measured by 90 percent of net corporate profits as not reasonable, but we treated compensation measured by 65 percent of net corporate profits as reasonable.

Respondent argues that the annual salary bonus paid to Meyer of $245,905 for 1990 and of $250,000 for 1991 and 1992 constitutes disguised consideration for acquisition of the assets of MCB. Respondent also argues that because Meyer intended to remain with International and because International was already achieving annual net profits of $700,000, the annual net profits contingency was not significant.

Petitioners argue that the payments made each year as a salary bonus constitute reasonable compensation for services rendered by Meyer to International and are fully deductible as ordinary and necessary business expenses.

We agree with petitioners with regard to the salary bonus.

Meyer's receipt each year of the salary bonus was contingent on Meyer's rendering significant services to International. During each year, Meyer managed the operations and expansion of International, and Meyer maintained virtually all of the former clients of MCB. The earnings of International depended primarily on the efforts of Meyer.

In the 2 years prior to the acquisition of the assets of MCB, Meyer received annual salaries from MCB of $600,000 and $800,000. During each of the years in issue and treating the salary bonus as part of his annual compensation for services rendered and not taking into account amounts paid under the covenant not to compete, Meyer's total annual compensation from

International equaled $400,000, consisting of the stated salary of $150,000 and the salary bonus of $250,000 -- approximately 60 percent of the annual salary Meyer received in 1988 and 1989.

We conclude that the $245,905 paid to Meyer for 1990 and the $250,000 paid to Meyer for each of the years 1991 and 1992 as a salary bonus should be treated as reasonable compensation paid to Meyer for services he rendered to International and as currently deductible ordinary and necessary business expenses.

To reflect the foregoing,

Decisions will be entered
under Rule 155.